# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                     No. CR 09-3078 JB

JOSHUA JUSTICE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Sentencing Memorandum by Defendant Joshua Justice and Motion for Downward Departures Under U.S.S.G. Section 5H1.6, U.S.S.G. Section 5H1.12; Request for a Downward Variance and for a Reasonable Sentence Under 18 U.S.C. Section 3553, filed May 5, 2011 (Doc. 288)("Sentencing Memorandum"); (ii) the Amended Objections to Pre-Sentence Report, filed May 12, 2011 (Doc. 292)("Objections"); and (iii) the Supplemental Sentencing Memorandum by Defendant Joshua Justice and Motion for Downward Departures Under U.S.S.G. Section 5H1.6, U.S.S.G. Section 5H1.12; Request for a Downward Variance and for a Reasonable Sentence Under 18 U.S.C. Section 3553, filed October 25, 2011 (Doc. 413)("Supplement"). The Court held sentencing hearings on May 23, 2011 and October 27, 2011. The primary issues are: (i) whether the Court should strike certain portions of the Presentence Investigation Report, disclosed March 24, 2011 ("PSR"), discussing Defendant Joshua Justice dealing methamphetamine; (ii) whether the Court should apply a 4-level reduction to Justice's offense level under U.S.S.G. § 3B1.2 based on his role as a minimal participant in the criminal activity at issue; (iii) whether the Court should grant a downward departure under U.S.S.G. § 5H1.12 for lack of guidance as a youth; (iv) whether the Court should grant a downward departure under

U.S.S.G. § 5H1.6 based on family ties and responsibilities; and (v) whether the Court should vary downward on Justice's sentence to a sentence of time served or 5 days, whichever is less.  Because the Court concludes that Plaintiff United States of America cannot prove that Justice was dealing methamphetamine by a preponderance of the evidence, it will sustain his objection regarding those portions of the PSR.  Because the Court concludes that the United States cannot prove by a preponderance of the evidence that Justice did more than use methamphetamine, the Court will apply a 4-level reduction to his offense level under U.S.S.G. § 3B1.2.  Because the Court does not believe that Justice's circumstances as a youth fall outside the heartland of cases, the Court will deny his request for a downward departure under U.S.S.G. § 5H1.6.  Because the Court believes that Justice's family circumstances do not fall outside the heartland of cases, the Court will deny his request for a downward departure under U.S.S.G. § 5H1.12.  Lastly, the Court will vary downward on Justice's advisory guideline sentence, because it believes that the factors in 18 U.S.C. § 3553(a) counsel in favor of a sentence of 5 days or time served, whichever is less.

## PROCEDURAL BACKGROUND

Justice, pursuant to a Plea Agreement, filed January 1, 2011 (Doc. 222), pled guilty to Counts 1 and 30 of the Superseding Indictment, filed April 27, 2010 (Doc. 62), charging him in Count 1 with a violation of 21 U.S.C. § 846, that being conspiracy to distribute methamphetamine, and in Count 30 with a violation of 21 U.S.C. § 843(b), that being use of a telephone to facilitate a drug trafficking offense.  The parties stipulate in the Plea Agreement that "7 grams of methamphetamine are attributable to the Defendant."  Plea Agreement ¶ 9, at 4.  The parties stipulate to a 2-level reduction to Justice's offense level under U.S.S.G. § 3B1.2, because Justice was a minor participant in the criminal activity underlying the Plea Agreement. Plea Agreement ¶ 9, at 4. The parties agree to a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1

"so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct." Plea Agreement ¶ 9, at 4.  Aside from the stipulations in the Plea Agreement, the parties "reserve their rights to assert any position or argument with respect to the sentence to be imposed."  Plea Agreement ¶ 9, at 5-6.

The United States Probation Office ("USPO") disclosed a PSR for Justice on March 24, 2011.  In the PSR, the USPO calculates Justice's total offense level to be 12.  See PSR ¶ 252, at 39. The PSR groups the guideline calculation for Counts 1 and 30 pursuant to U.S.S.G. § 3D1.2(d).  See PSR ¶ 244, at 38.  The PSR applies a base offense level of 16 pursuant to U.S.S.G. § 2D1.1(c)(12) based on the amount of methamphetamine in Justice's possession.  See PSR ¶ 245, at 39.  The PSR includes a 2-level downward adjustment pursuant to the parties' stipulation that Justice was a minor participant in the criminal activity at issue.  See PSR ¶ 248, at 39.  The PSR notes that there is not sufficient information to conclude whether Justice was working under the direction of another or directing others, and thus no reduction for his role as a minor participant should apply.  See PSR ¶ 248, at 39.  The PSR includes a 2-level reduction under U.S.S.G. § 3E1.1 based on Justice's acceptance of responsibility.  See PSR ¶ 251, at 39.  The PSR lists his criminal history category as III, based on 5 criminal history points.  See PSR ¶ 259, at 46.  The PSR calculates that an offense level of 12 and a criminal history category of III results in a guideline imprisonment range of 15 to 21 months.  See PSR ¶ 301, at 56.  The Court adopts the factual findings in the PSR as its own, except with respect to the objections the Court sustained to paragraphs 47, 239, and 248.

On May 5, 2011, Justice filed his Sentencing Memorandum.  He requests that the Court sentence him to either "3 to 5 years probation or 3 to 5 years of supervised release."  Sentencing Memorandum at 11.  He notes that he has a great deal of strong family support.  See Sentencing Memorandum at 2.  He contends that "[i]ncarceration is not necessary to achieve the Section 3553

goals of sentencing." Sentencing Memorandum at 3. He asserts that he has: (i) graduated from college; (ii) has obtained full-time employment; and (iii) is moving forward regarding his responsibilities as a parent. See Sentencing Memorandum at 3. He notes that he is eligible for a probated sentence for his two convictions, as Count 1 is a Class C felony offense and Count 30 is a Class E felony offense for which probation is permissible. See Sentencing Memorandum at 3-4.[1] He requests a downward departure under U.S.S.G. § 5H1.12 based on the lack of guidance he received as a youth. See Sentencing Memorandum at 4-5. He asserts that, when he "was age 18, his father used methamphetamine with him." Sentencing Memorandum at 4. He argues that "[i]t is an understatement to say that [his] dad was a poor role model who did not provide a positive example or educate him appropriately." Sentencing Memorandum at 4. He notes that he has no alcohol abuse problem, but concedes that he has a methamphetamine problem. See Sentencing Memorandum at 4. He notes that his experiences have motivated him to remain sober and abstain from methamphetamine use. See Sentencing Memorandum at 4-5. He also requests a downward departure under U.S.S.G. § 5H1.6 based on his family ties and responsibilities. See Sentencing Memorandum at 5-6. He asserts that he is now responsible for caring for his first child, and has rearranged his life to support his wife and child. See Sentencing Memorandum at 5-6. Regarding the appropriateness of a sentence of probation or time served, Justice asserts that he "has no violent criminal history and no history of placing public safety in jeopardy." Sentencing Memorandum at 6. He contends that placing him on location monitoring and substance abuse monitoring during the early phases of his sentence would alleviate many of the Court's concerns. See Sentencing

---

[1]A Class C felony is punishable by "less than twenty-five years but ten or more years." 18 U.S.C. § 3559(a)(3). A Class E felony is punishable by "less than five years but more than one year." 18 U.S.C. § 3559(a)(5).

Memorandum at 6-7.  He notes that he has a positive history of pretrial supervision.  <u>See</u> Sentencing Memorandum at 7.  He states that this criminal prosecution has made a strong impression on him, and that he consequently has a lower risk of recidivism.  <u>See</u> Sentencing Memorandum at 7.  He argues that he is one of the least culpable of the co-Defendants charged in this case.  <u>See</u> Sentencing Memorandum at 9-10.

On May 12, 2011, Justice filed his Objections to the inclusion of several convictions in his criminal history calculation based on the lack of evidence that he had counsel to represent him during the proceedings related to those convictions.  <u>See</u> Objections at 4-7.  Justice also argued that the references in the PSR to his role as a "mid to lower-level drug dealer" in paragraph 47 of the PSR cannot be proved by a preponderance of the evidence, particularly based on the small amount of methamphetamine attributed to him.  <u>See</u> Objections at 1-3.  He also objected to some other similar references in the PSR that discuss him dealing methamphetamine.  <u>See</u> Objections at 1-3.  Additionally, Justice argued that he should receive a 4-level reduction for a minimal role adjustment under U.S.S.G. § 3B1.2(a).  <u>See</u> Objections at 3.  He asserts that the PSR's factual statements and other evidence support the application of this role adjustment, including: (i) the lack of evidence that he ever dealt methamphetamine; (ii) the nature of his relationship with co-Defendant Joshua Wright, the leader of the organization; (iii) the gross amount of methamphetamine trafficked during the conspiracy, 409.2 grams of methamphetamine, in relation to the seven grams found in his possession; (iv) his low rate of use of methamphetamine; and (v) the larger role some of the other co-Defendants played.  <u>See</u> Objections at 3-4 (citing PSR ¶¶ 44, 238-239, 248, 278, at 12, 37, 39, 51).  The United States did not file a written response to either the Sentencing Memorandum or the Objections.

On May 13, 2011, the USPO disclosed an Addendum to the PSR to address these objections

and the requests for departures in the Sentencing Memorandum.  The USPO provides further explanation supporting its characterization of Justice as a "street level dealer" and did not alter the PSR.  Addendum to PSR at 1.  Specifically, it states that certain text messages between Justice and Wright indicate the Justice was dealing drugs.  <u>See</u> Addendum to PSR at 1.  The USPO then provides some supplemental information regarding Justice's representation of counsel in relation to his prior convictions.  <u>See</u> Addendum to PSR at 2-3.  The USPO also maintains its position that a minor role adjustment is not appropriate, but that it will continue to apply the 2-level reduction under U.S.S.G. § 3B1.2 based on the parties' Plea Agreement.  <u>See</u> Addendum to PSR at 2.  It does not agree to the application of a 4-level reduction for a minimal role adjustment under U.S.S.G. § 3B1.2(a).  <u>See</u> Addendum to PSR at 2.  Regarding a departure under U.S.S.G. § 5H1.12 based on lack of guidance as a youth, the USPO acknowledges that Justice had an unstable upbringing.  <u>See</u> Addendum to PSR at 3.  The USPO notes that Justice reported that he had to become "the man of the house" at the age of thirteen when his father left home.  Addendum to PSR at 3.  The USPO notes that Justice never indicated that his father was the reason he began using methamphetamine, but only that he once took methamphetamine with his father.  <u>See</u> Addendum to PSR at 3.  The USPO emphasizes that considerations of lack of guidance of a youth are generally not relevant and thus opposes a departure on this grounds.  <u>See</u> Addendum to PSR at 3.   Regarding a departure under U.S.S.G. § 5H1.6 based on family ties and responsibilities, the USPO acknowledges that Justice's "family circumstances are unfortunate," but concludes that "they do not appear to be extraordinary."  Addendum to PSR at 4.  It notes "that in nearly all cases, families and significant others are affected by the incarceration of a loved one."  Addendum to PSR at 4.  It asserts that "[t]he defendant's circumstances do not appear extraordinary to the extent that they warrant a downward departure."  Addendum to PSR at 4.

The Court held a sentencing hearing on May 23, 2011. At the hearing, Justice asserted that the Court should strike the reference in the PSR referring to him as a mid- to lower-level drug dealer. See Transcript of Hearing at 3:8-14 (taken May 23, 2011)(Court, Tallon)("May 23, 2011 Tr.").[2] Justice asserted that the USPO misinterpreted some conversations between Justice and Wright where Justice purchased seven grams of methamphetamine for personal use. See May 23, 2011 Tr. at 3:15-4:12 (Tallon). He contended that he purchased this amount of methamphetamine at that time, because he wanted methamphetamine for himself and had the money to purchase that amount of drugs with some Pell Grant funds he received. See May 23, 2011 Tr. at 3:15-4:12 (Tallon). Justice asserts that some of the statements he made to Wright over the telephone which would suggest he was dealing drugs were jokes and not meant to be taken seriously. See May 23, 2011 Tr. at 3:15-4:12 (Tallon).[3] The United States asserted that federal officers would have had no way of knowing that the statements were jokes, but recognized that the respective provisions in the PSR are irrelevant for sentencing purposes. See May 23, 2011 Tr. at 5:4-14 (Stanford). The United States emphasized that it has never viewed Justice as a major target and indicated that he was responsible for the lowest amount of methamphetamine of all the co-Defendants. See May 23, 2011 Tr. at 5:11-6:7 (Stanford). The United States agreed that Justice's involvement did not suggest he was a mid- to lower-level drug dealer. See May 23, 2011 Tr. at 6:4-7 (Stanford). The Court then sustained the objection with some modifications based on the lack of evidence to support a finding

---

[2]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

[3]The statements attributable to Justice appear in paragraphs 118 to 132 of the PSR. See PSR ¶¶ 118-32, at 23-24. The particular statements which Justice asserts were a joke are as follows: "For as little as 2 q.o.'s a week u could help this broke mofuka pay his way through college. So won't u call. He's waiting. Operators are standing by." PSR ¶ 121, at 23.

that Justice was a dealer.  <u>See</u> May 23, 2011 Tr. at 7:8-13 (Court).

Regarding the application of a 4-level reduction for a minimal role adjustment as opposed to a 2-level reduction for a minor role adjustment, the United States asserted that it had only minor reservations about applying a 4-level reduction but expressed some opposition to the change.  <u>See</u> May 23, 2011 Tr. at 8:8-15 (Stanford).  The United States indicated that there is some evidence suggesting that Justice may have been selling methamphetamine to pay his way through college, but noted that he may not have been serious when he made the statements[4] to this effect.  <u>See</u> May 23, 2011 Tr. at 8:20-24 (Stanford).  The United States related that, considering the scale of this criminal operation, Justice's possession of seven grams of methamphetamine was minor compared to the involvement of the other co-Defendants in the case.  <u>See</u> May 23, 2011 Tr. at 9:2-10:5 (Court, Stanford).  The United States suggested that the Court should apply a 3-level reduction as a compromise rather than apply a 4-level reduction.  <u>See</u> May 23, 2011 Tr. at 9:17-10:5 (Stanford). Justice emphasized that, based on the paranoia Wright expressed while running this criminal organization, he had few interactions with Wright and was less involved in this criminal operation than the other co-Defendants.  <u>See</u> May 23, 2011 Tr. at 10:15-11:15 (Tallon).  He also stated that some of his conversations with Wright, for example trying to pay for methamphetamine with a Pell Grant check, indicate that he had little knowledge about drug trafficking.  <u>See</u> May 23, 2011 Tr. at 11:16-12:1 (Tallon).  He also emphasized that there are no other recorded transactions between Justice and Wright beyond the seven-gram transaction.  <u>See</u> May 23, 2011 Tr. at 12:4-7 (Tallon). Justice conceded that he is a methamphetamine user, but argued that this role warrants a minimal role adjustment in the conspiracy.  <u>See</u> May 23, 2011 Tr. at 12:14-13:2 (Tallon).  The Court

---

[4]<u>See</u> PSR ¶ 121, at 23 ("For as little as 2 q.o.'s a week u could help this broke mofuka pay his way through college.  So won't u call.  He's waiting.  Operators are standing by.").

sustained the objection regarding the application of a minor role adjustment as opposed to a minimal role adjustment. <u>See</u> May 23, 2011 Tr. at 14:1-12 (Court). The Court did so on the basis that, while Justice may have attempted to become a larger part of the criminal organization, a preponderance of the evidence did not support a finding that he was a dealer as opposed to a user. <u>See</u> May 23, 2011 Tr. at 14:1-12 (Court).

On October 6, 2011, the Court issued a Memorandum Opinion and Order overruling Justice's objections to the inclusion of certain allegedly uncounseled misdemeanors in his criminal history calculation. <u>See</u> Doc. 400 at 1 ("MOO"). The Court thus applied a criminal history category of III. The Court did not address Justice's arguments regarding a minor role adjustment. <u>See</u> MOO at 22.

On October 25, 2011, Justice filed his Supplement to his Sentencing Memorandum. Justice asserts that, following the Court's resolution of some of his objections, his criminal offense level is 10 and his criminal history category is III, which yields a guideline imprisonment range of 10 to 16 months. <u>See</u> Supplement at 3. Justice then recounts some of his recent criminal history in state court that preceded, and has been ongoing throughout, this federal proceeding. <u>See</u> Supplement at 3-4. He asserts that, based on an order of conditional discharge and probationary supervision issued in San Juan County, New Mexico that arose out of controlled substance charges, his criminal history points should now be 6, which yields a criminal history category of III. <u>See</u> Supplement at 4. Justice also provides additional information about his new son, who was born on September 30, 2011. <u>See</u> Supplement at 5. Justice then compares his requested sentence to some of the sentences his co-Defendants have received in order to support his request. <u>See</u> Supplement at 6-9. He reasserts his previous requests for a variance contained in his Sentencing Memorandum. <u>See</u> Supplement at 10.

At the sentencing hearing on October 27, 2011, Justice emphasized that he has performed

strongly in community college, that he has maintained full-time employment for some time, and that he has taken many steps to prepare for having a new child.  See Transcript of Hearing at 4:22-5:22 (taken October 27, 2011)(Tallon)("Oct. 27, 2011 Tr.").  He contended that these circumstances justified a downward departure under U.S.S.G. § 5H1.6.  See Oct. 27, 2011 Tr. at 6:4-10 (Tallon). The United States asserted its position that Justice is the least culpable member of the criminal organization which was the subject of this investigation.  See Oct. 27, 2011 Tr. at 6:20-25 (Stanford).  It emphasized that he was dealing with much smaller amounts of methamphetamine than many of his co-Defendants.  See Oct. 27, 2011 Tr. at 7:1-7 (Stanford).  The United States contended that there is little evidence that he sold methamphetamine beyond possibly selling the drug to some of his friends to pay for his schooling.  See Oct. 27, 2011 Tr. at 7:8-14 (Stanford).  The United States asserted that it would not object to a sentence that involved some combination of electronic monitoring and probation, followed with supervised release.  See Oct. 27, 2011 Tr. at 7:19-22 (Stanford).  The Court told the parties that it would consider Justice's family circumstances when addressing the issue of a variance, but stated that it would not depart downward under U.S.S.G. § 5H1.6.  See Oct. 27, 2011 Tr. at 10:4-11:7 (Court).  Regarding a departure under U.S.S.G. § 5H1.12, Justice asserted that he is the oldest of four children and that he has lacked a father figure since he was young.  See Oct. 27, 2011 Tr. at 11:11-25 (Tallon).  He contended that this situation led him toward drug abuse.  See Oct. 27, 2011 Tr. at 12:1-9 (Tallon).  He noted that his father was convicted of sexually abusing one of Justice's sisters.  See Oct. 27, 2011 Tr. at 12:10-17 (Tallon). The United States had no comment on a downward departure under this guideline.  See Oct. 27, 2011 Tr. at 14:22-24 (Court, Stanford).  The Court then denied the request for a departure under U.S.S.G. § 5H1.12.  See Oct. 27, 2011 Tr. at 14:25-16:4 (Court).  Regarding his request for a variance, Justice asserted that he has complied with all aspects of pretrial supervision.  See Oct. 27,

2011 Tr. at 16:17-25 (Tallon).  He noted his progress in community college.  <u>See</u> Oct. 27, 2011 Tr. at 17:1-15 (Tallon).  He asked the Court to consider that many of his criminal history points arose out of non-violent misdemeanor convictions.  <u>See</u> Oct. 27, 2011 Tr. at 17:16-18:21 (Tallon).  He contended that the sentence he has requested would provide adequate deterrence under the circumstances.  <u>See</u> Oct. 27, 2011 Tr. at 18:22-19:6 (Tallon).

<b>LAW REGARDING MITIGATING ROLE ADJUSTMENTS</b>

U.S.S.G. § 3B1.2 authorizes courts to reduce a defendant's offense level if the defendant was a minimal or minor participant in an offense.  <u>See</u> U.S.S.G. § 3B1.2; <u>United States v. Aguilar</u>, No. 04-311, 2005 WL 2313585, at *3 (D.N.M. Aug. 18, 2005)(Browning, J.).  U.S.S.G. § 3B1.2 provides in full:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.  Application note 3 indicates that this guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant."  U.S.S.G. § 3B1.2 cmt. n.3(A).  Application note 3 further confirms that a court's task in determining the application of this guideline is highly fact-based: "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2 cmt. n.3(A).

-11-

In an amendment to this guideline effective on November 1, 2011, the United States Sentencing Commission removed the following sentence from application note 4: "It is intended that the downward adjustment for a minimal participant be used infrequently."  U.S. Sentencing Manual app. C, vol. III, at 406 (2011).  As a reason for this change, the Sentencing Commission stated: "The Commission determined that [this sentence is] unnecessary and may have the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances."  U.S. Sentencing Manual app. C, vol. III, at 406.  Subsection (a) regarding minimal participants covers defendants who are plainly among the least culpable of those involved in the conduct of a group.  See U.S.S.G. § 3B1.2 cmt. n.4.  Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant.  See U.S.S.G. § 3B1.2 cmt. n.4.  Subsection (b) covers a defendant who "is less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2 cmt. n.5.

### LAW REGARDING U.S.S.G. § 5H1.6

U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."  U.S.S.G. § 5H1.6.  The application note to this guideline recognizes that a court should consider the following factors when deciding whether to grant a departure under this guideline:

(A)     In determining whether a departure is warranted under this policy statement, the court shall consider the following non-exhaustive list of circumstances:

(i)      The seriousness of the offense.

(ii)     The involvement in the offense, if any, of members of the defendant's family.

(iii)    The danger, if any, to members of the defendant's family as a result

-12-

of the offense.

(B)    . . . A departure under this policy statement based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:

(i)    The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.

(ii)    The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.

(iii)    The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.

(iv)    The departure effectively will address the loss of caretaking or financial support.

U.S.S.G. § 5H1.6 cmt. n.1. This guideline provision is a policy statement. See United States v. Medina-Rodriguez, 348 F.App'x 396, 398 n.3 (10th Cir. 2009)(unpublished). A district court may also rely on the existence of family ties and responsibilities in varying downward on a defendant's sentence. See United States v. Munoz-Nava, 524 F.3d 1137, 1148 (10th Cir. 2008).

## LAW REGARDING U.S.S.G. § 5H1.12

U.S.S.G. § 5H1.12 provides: "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.12. Before United States v. Booker, 543 U.S. 220 (2005), the United States Court of Appeals for the Tenth Circuit characterized this factor as a "forbidden" factor for

-13-

a sentencing judge to consider.  See United States v. Neal, 249 F.3d 1251, 1255 n.3 (10th Cir. 2001).

In United States v. Browning, 252 F.3d 1153 (10th Cir. 2001), the Tenth Circuit was confronted with the issue whether the sentencing court erred in declining to grant a downward departure based upon childhood abuse.  See 252 F.3d at 1160.  The Tenth Circuit first explained that, as a general matter, U.S.S.G. § 5H1.12 prohibits departures for lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing.  See United States v. Browning, 252 F.3d at 1160.  The Tenth Circuit noted that other circuits have distinguished "exceptionally cruel," and "psychological and emotional abuse," from generalized lack of guidance or neglect discouraged as a basis for departure under U.S.S.G. § 5H1.12.  United States v. Browning, 252 F.3d 1153 at 1160.  The Tenth Circuit found, however, that it did not have jurisdiction to review the sentencing court's refusal to grant a downward departure, because the sentencing court did not state that it lacked the authority to depart.  See United States v. Browning, 252 F.3d 1153 at 1160 (stating that, "[d]espite the analytical soundness of Ayers, Rivera, and other similar cases, we do not have jurisdiction to apply them to [the defendant]'s claim.  Our review of a sentencing court's refusal to grant a downward departure is narrow").  The Tenth Circuit later emphasized that it has not yet joined other circuits that have allowed departures based on childhood abuse.  See United States v. Poole, 15 F.App'x 729, 730 (10th Cir. 2001)(unpublished)("Although we have recognized that other federal courts have allowed downward departure in instances of extreme childhood abuse, we have not made a similar holding.").

In United States v. Ayers, 971 F.Supp. 1201 (N.D. Ill. 1997), the sentencing court found that departure was warranted under U.S.S.G. § 5H1.12.  See 971 F.Supp. at 1201.  The sentencing court explained:

In this case, the court finds that the childhood abuse [the defendant] suffered was

-14-

> exceptionally cruel.  In and of itself, the physical and sexual abuse that [the defendant] endured was extreme but not extraordinary: Many defendants that have appeared before this court over the years were beaten and sexually abused as children.  What makes [the defendant's] case exceptional in the eyes of the court is the psychological and emotional abuse that [the defendant's] father relentlessly inflicted on [the defendant] over a period of years.  This psychological and emotional abuse was a form of sadistic torture.

United States v. Ayers, 971 F.Supp. at 1200 (footnote omitted).  See United States v. Rivera, 192 F.3d 81, 84-85 (2d Cir. 1999)(collecting circuit court authority involving departures on the basis of extreme childhood abuse).

## ANALYSIS

Because the Court believes that the United States cannot prove that Justice was dealing methamphetamine by a preponderance of the evidence, it will sustain his objection regarding those portions of the PSR.  Because the Court believes that the United States cannot prove by a preponderance of the evidence that Justice did more than use methamphetamine, the Court will apply a 4-level reduction to his offense level under U.S.S.G. § 3B1.2.  Because the Court does not believe that Justice's circumstances as a youth fall outside the heartland of cases, the Court will deny his request for a downward departure under U.S.S.G. § 5H1.6.  Because the Court believes that Justice's family circumstances do not fall outside the heartland of cases, the Court will deny his request for a downward departure under U.S.S.G. § 5H1.12.  Lastly, the Court will vary downward on Justice's advisory guideline sentence, because it believes that the factors in 18 U.S.C. § 3553(a) counsel in favor of a sentence of 5 days or time served, whichever is less.

## I.  CONSISTENT WITH THE DISCUSSION AT THE SENTENCING HEARING ON MAY 23, 2011, THE COURT WILL SUSTAIN JUSTICE'S OBJECTIONS TO THE PORTIONS OF THE PSR THAT REFER TO HIM DEALING METHAMPHETAMINE.

Justice argues that the references in the PSR to his role as a "mid to lower-level drug dealer"

in paragraph 47 of the PSR cannot be proved by a preponderance of the evidence, particularly based on the small amount of methamphetamine attributed to him.  Objections at 1-3.  He also objects to some other similar references in the PSR that referred to him dealing methamphetamine.  See Objections at 1-3.  The USPO asserts that certain conversations between Justice and Wright indicate that Justice was dealing methamphetamine, which warranted this language in the PSR.  See Addendum to PSR at 1.  Justice asserts that the USPO misinterpreted some conversations between Justice and Wright where Justice purchased seven grams of methamphetamine for personal use.  See May 23, 2011 Tr. at 3:15-4:12 (Tallon).  He contends that some of the statements that would suggest Justice was dealing drugs were jokes and not meant to be taken seriously.  See May 23, 2011 Tr. at 3:15-4:12 (Tallon).  The United States argues that federal officers would have had no way of knowing the statements were jokes, but recognized that the provision in the PSR is irrelevant for sentencing purposes.  See May 23, 2011 Tr. at 5:4-14 (Stanford).  The United States emphasizes that it has never viewed Justice as a major target and has indicated that he was responsible for the lowest amount of methamphetamine of all the co-Defendants.  See May 23, 2011 Tr. at 5:11-6:7 (Stanford). The United States agrees that Justice's involvement did not suggest he was a mid- to lower-level drug dealer.  See May 23, 2011 Tr. at 6:4-7 (Stanford).

While there are indications that Justice may have engaged in some methamphetamine transactions, there is not enough evidence to support a finding by a preponderance of the evidence that he dealt methamphetamine.  The evidence predominantly points towards a finding that Justice was a user of methamphetamine rather than a dealer.  The Court finds it particularly significant that he was in possession of a small amount of methamphetamine --  seven grams out of a total of over 400 grams involved in the conspiracy -- in relation to his co-Defendants.  Importantly, given the charges to which Justice pled guilty, these references in the PSR do not impact his sentencing

calculation.  Consistent with its discussion at the hearing on May 23, 2011, the Court will sustain

the objections and modify the portions of the PSR to which Justice has objected.  See May 23, 2011

Tr. at 7:8-13 (Court).  The Court will remove the references in paragraph 47 that mention "dealers"

and replace that term with the term "defendants."[5]  The Court will also remove the sentence in

paragraph 248 referring to Justice as a dealer of methamphetamine.  See PSR ¶ 248, at 39 ("It

appears the defendant was an independent, street-level dealer of methamphetamine.").  The Court

will also remove the reference to Joshua Justice in paragraph 239.  See PSR ¶ 239, at 37 ("Many of

the lower level dealers, to include Joshua Justice . . . , would independently sell methamphetamine

in order to pay for their personal use of methamphetamine . . . .").  The Court will not modify

paragraphs 118 through 132.

## II.  THE COURT WILL APPLY A 4-LEVEL REDUCTION TO JUSTICE'S OFFENSE LEVEL BASED ON HIS MINIMAL ROLE IN THE CRIMINAL ACTIVITY AT ISSUE.

U.S.S.G. § 3B1.2 authorizes courts to reduce a defendant's offense level if the defendant was

a minimal or minor participant in an offense.  See U.S.S.G. § 3B1.2.  U.S.S.G. § 3B1.2 provides in

full:

> Based on the defendant's role in the offense, decrease the offense level as

---

[5]Before modification, this paragraph provides:

> Wright regularly "fronted" half-ounce and ounce amounts to these dealers and frequently had to pester them to pay him.  Many, if not most, of these dealers appeared to be users supporting their own habit, but they provided distribution outlets for Wright.  The basic framework of Wright's Drug Trafficking Organization (DTO) was described by several confidential informants.  Wright stop using TT1 soon after interception began, as it was a "pay as you go" phone, and he simply let his minutes run out without renewing.  The calls intercepted on TT3 were of almost no value.  Thus, the charges all stem from TT2.

PSR ¶ 47, at 13.

follows:

> (a)     If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

> (b)     If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2. Application note 3 indicates that this guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). Application note 3 further confirms that a court's task in determining the application of this guideline is highly fact-based: "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(A). Subsection (a) regarding minimal participants covers defendants who are plainly among the least culpable of those involved in the conduct of a group. See U.S.S.G. § 3B1.2 cmt. n.4. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. See U.S.S.G. § 3B1.2 cmt. n.4. Subsection (b) covers a defendant who "is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5.[6]

---

[6]In an amendment to this guideline effective on November 1, 2011, several days after Justice's sentencing hearing on October 27, 2011, the Sentencing Commission removed the following sentence from application note 4: "It is intended that the downward adjustment for a minimal participant be used infrequently." U.S. Sentencing Manual app. C, vol. III, at 406. As a reason for this change, the Sentencing Commission stated: "The Commission determined that [this sentence is] unnecessary and may have the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." U.S. Sentencing Manual app. C, vol. III, at 406.

This criminal organization was relatively complex, and the United States charged a total of thirteen co-Defendants in this case. <u>See</u> Superseding Indictment at 1-8. While the United States did not agree to a 4-level reduction under U.S.S.G. § 3B1.2 and instead suggested at the sentencing hearing that a 3-level reduction should apply, it has conceded that Justice was the least culpable of all the co-Defendants in this criminal organization. Government agents seized over 400 grams of methamphetamine in this case, but seized only seven grams from Justice. <u>See</u> PSR ¶ 238, at 37. That amount of methamphetamine is the lowest amount seized from any of the co-Defendants. <u>See</u> PSR ¶ 238, at 37.[7] This amount of methamphetamine equals approximately a quarter of an ounce. While that amount may be more than a person would normally have for personal use, it is not an amount strongly indicative of drug trafficking. Furthermore, it appears Justice may have attempted to play a greater role in the organization and that Wright did not allow him to do so. The Court believes, based on the evidence before it, that Justice is plainly among the least culpable of those involved in the conduct of this organization. The evidence does not support a finding that he dealt in methamphetamine and instead indicates that he was purchasing methamphetamine for himself. Consequently, the Court will apply a 4-level reduction on his offense level under U.S.S.G. § 3B1.2(a). That reduction yields an offense level of 10 after accounting for a 2-level reduction for acceptance of responsibility.

## III.   THE COURT WILL NOT GRANT A DEPARTURE BASED ON JUSTICE'S LACK OF GUIDANCE AS A YOUTH.

U.S.S.G. § 5H1.12 provides: "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.12. Before <u>United States v. Booker</u>, the Tenth Circuit characterized

---

[7]One other co-Defendant also had seven grams. <u>See</u> PSR ¶ 238, at 37.

this factor as a "forbidden" factor for a sentencing judge to consider.  United States v. Neal, 249

F.3d at 1255 n.3.  The Tenth Circuit has not elaborated significantly on the general application of

this guideline.  The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011).

The Sentencing Commission has expressed as a matter of policy that lack of guidance of

youth is ordinarily not relevant in determining a defendant's sentence.  While the Court is not bound

by the guidelines, the Court agrees with this underlying policy based on its own experiences.  Many

defendants have a troubled history during their youth, based on a lack of guidance or for other

reasons.  In extraordinary cases, a defendant's troubled youth may counsel in favor of a departure.

A substance abuse evaluation in which Justice participated indicates that he first began abusing

methamphetamine at the age of sixteen.  See PSR ¶ 278, at 51.  He reports that he once took

methamphetamine with his father at the age of eighteen.  See Sentencing Memorandum at 4.  While

his early use of methamphetamine is troubling, it does not necessarily appear that it resulted from

lack of guidance as a youth.  The Court would be more troubled if the first time Justice took

methamphetamine was with his father.  The Court is conscious that Justice had a troubled youth that

likely contributed to his current situation, as his father left his mother and his siblings when Justice

was relatively young.  Those circumstances, however, are not so extraordinary as to fall outside the

heartland of cases.  Many defendants appear before the Court with troubling histories as youths.

Like many defendants, Justice did not have a father figure when he was young.  Based on those facts

alone, the Court does not believe that a departure under this guideline is warranted.

-20-

While the Court recognizes that it may permissibly depart downward for lack of guidance as a youth, the Court does not believe that a departure is warranted under the facts and circumstances. The Court is having trouble distinguishing the case from many others, unfortunately. The federal prisons are full with may who had troubled youths and bad fathers. The case remains within the heartland of cases that the federal courts and this Court see. In any case, the Court chooses not to depart, because the Court does not believe a departure is warranted under the facts and circumstances here. The circumstances, while sad, are not extreme. Finally, even if a departure were warranted, the Court would exercise its discretion not to depart. Not only does the case remain in the heartland of federal cases, the Court believes a variance is more appropriate here than a departure.

## IV. THE COURT WILL NOT GRANT A DEPARTURE BASED ON JUSTICE'S FAMILY TIES AND RESPONSIBILITIES.

U.S.S.G. § 5H1.6 provides that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011).

The Court does not believe that Justice's family ties and responsibilities are such that his situation falls outside the heartland of cases. Many defendants whom the Court sentences to a term of imprisonment have young children. Many men who commit crimes are at the age where they begin having children. This pattern is a common one that appears before the Court. Our prisons are

filled with men who are fathers.  The Court sees no facts in this case that distinguish it in a material way from other cases that appear before the Court.  Circumstances that might justify a departure would include a situation where the young child has serious health problems and requires constant care.  Another would be if there was no mother or other family members present to care for the child, and a lengthier term of incarceration would result in the father losing custody of the child to the state permanently.  In a prior case, the Court permitted a downward departure under this guideline where the defendant had a daughter and a grandchild with severe health problems, both of whom required significant attention and could not live alone.  See United States v. Martinez, No. 09-3078, 2011 WL 6828055, at *5 (D.N.M. Dec. 19, 2011)(Browning, J.).  Additionally, the daughter's father was a severe alcoholic who was unable to care for children, and the defendant had no family members living in or near New Mexico.  See United States v. Martinez, 2011 WL 6828055, at *5.  Furthermore, the Court has denied departures under this guideline in cases with more compelling facts than this one.  For example, in United States v. Ledezma-Ledezma, No. 10-1924, 2011 WL 3957553 (D.N.M. Sept. 2, 2011)(Browning, J.), the Court denied a downward departure under this guideline when the defendant argued he had traveled to the United States to protect his children, who one of his stepchildren was allegedly abusing sexually.  See 2011 WL 3957553, at *2-3.  While the Court recognizes that imprisoning fathers can sometimes devastate a family, this case is not one that falls outside the heartland of cases.  Consequently, the Court will deny a departure under this guideline.

The Court acknowledges that a Court may permissibly depart based on a defendant's family ties and responsibilities.  The Court is, however, having trouble distinguishing this case from many others.  Unfortunately, the federal prisons contain many fathers.  In any case, the Court chooses not to depart, because the Court does not believe that a departure is warranted under the facts and

circumstances here.  The facts here do not appear extraordinary.  Finally, even if a departure were warranted under the facts of the case, the Court would exercise its discretion not to depart.  Not only does the case remain in the heartland of cases, but these issues are more appropriately addressed with a variance than with a departure.

## V.    THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 5 DAYS OR TIME SERVED, WHICHEVER IS LESS.

The Court has sustained an objection to the PSR's application of a 2-level minor role adjustment and instead applied a 4-level reduction based on Justice's role as a minimal participant in the criminal activity at issue.  There being no other disputes about the PSR's guideline calculation, the Court adopts that calculation as its own.  Justice has informed the Court that his criminal history points should be higher, a 6 rather than a 5, based on some recent criminal proceedings against him.  Either number of criminal history points yields the same criminal history category of III.  A criminal offense level of 10 and a criminal history category of III yields a guideline imprisonment range of 10 to 16 months.

The Court has carefully considered the parties' arguments and the circumstances of this case.  The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth is not appropriate for Justice's offenses.  With respect to Counts 1 and 30, the Court believes that a sentence of 5 days or time served, whichever is less, along with 10 months of electronic monitoring is sufficient to reflect the seriousness of his offenses.  The Court does not believe that additional incarceration will more fully accomplish the factors set forth in 18 U.S.C. § 3553(a).  Other conditions that the Court will require as part of supervised release will also provide Justice with some needed education, training, and care to prevent these problems from reoccurring.  While

the Court is varying from the bottom of the guideline range, it is replacing incarceration with a lengthy period of electronic monitoring to ensure compliance with the conditions of supervised release.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). Justice's participation in this criminal organization, as the United States has conceded, was less involved than any of his co-Defendants. Thus, this sentence reflects the seriousness of the offenses. For the same reasons, the sentence promotes respect for the law. Taking into account his lesser degree of culpability, the Court believes the sentence promotes respect for the law and provides just punishment. The Court does not believe that there is a need to specifically deter Justice in this case. He does not appear to present a great danger to any person or to the public, and he seems to be a good candidate for rehabilitation. Those familiar with the facts and circumstances of the case and some of the lengthier sentences his co-Defendants have received, including the sentence the leader of the organization received, would agree that the sentence affords adequate deterrence. The leader of the organization, Wright, received a total sentence of 120 months based on a requirement that he serve some consecutive 60-month sentences. One of the other co-Defendants who sold methamphetamine and had one of the lower amounts of methamphetamine among the co-Defendants received a sentence of only 13 months in part based on the person's substance abuse problems. Another co-Defendant who sold methamphetamine received a sentence of 48 months. A third co-Defendant, Duncan Selph, who sold methamphetamine received a sentence of 41 months. One co-

Defendant, Lorraine Martinez, who was more culpable than Justice but who had some compelling circumstances regarding her family ties and responsibilities warranting a departure, received a sentence of 5 days.  Given Justice's lack of violent criminal history, the Court believes this sentence adequately protects the public.  Justice has expressed his desires to get his life back on track, and start a life with his girlfriend and young son.  Justice is almost in his thirties now and will have a lower risk of recidivism than younger defendants.  Given the higher degree of culpability of many of his co-Defendants, the Court believes that this sentence does not create unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  With respect to Counts 1 and 30, the Court sentences Justice to a sentence of 5 days or time served, whichever is less, along with 10 months of electronic monitoring.  These sentences will run concurrently.

**IT IS ORDERED** that the requests for downward departures in: (i) the Sentencing Memorandum by Defendant Joshua Justice and Motion for Downward Departures Under U.S.S.G. Section 5H1.6, U.S.S.G. Section 5H1.12; Request for a Downward Variance and for a Reasonable Sentence Under 18 U.S.C. Section 3553, filed May 5, 2011 (Doc. 288); and (ii) the Supplemental

Sentencing Memorandum by Defendant Joshua Justice and Motion for Downward Departures Under

U.S.S.G. Section 5H1.6, U.S.S.G. Section 5H1.12; Request for a Downward Variance and for a

Reasonable Sentence Under 18 U.S.C. Section 3553, filed October 25, 2011 (Doc. 413), are denied.

The Court will grant the request for a downward variance contained in the Sentencing

Memorandum.  The Court will sustain the remaining objections in the Defendant's Amended

Objections to Pre-Sentence Report, filed May 12, 2011 (Doc. 292).  The Court will sustain Justice's

objections to those portions of the Presentence Report, disclosed March 24, 2011, that refer to him

dealing methamphetamine.  The Court will apply a 4-level reduction to his offense level under

U.S.S.G. § 3B1.2.  The Court will deny his request for a downward departure under U.S.S.G.

§ 5H1.6.  The Court will deny his request for a downward departure under U.S.S.G. § 5H1.12.

Lastly, the Court will vary downward on Justice's advisory guideline sentence to a sentence of 5

days or time served, whichever is less.


UNITED STATES DISTRICT JUDGE


*Counsel:*

Kenneth J. Gonzales
    United States Attorney
Jon K. Stanford
    Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Daniel J. Tallon
Placitas, New Mexico

      *Attorney for the Defendant*